**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEIZURE OF** | ) |
| **THE FOLLOWING PROPERTY:** | ) |
| | ) |
| **All funds up to $5,250.00 From Congressional** | ) |
| **Federal Credit Union checking account** | ) |
| **number XX3802, held in the name of DAVID** | ) |
| **LARKER** | ) |
| | ) |

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT**

I, Bridget Cox, being duly sworn, depose and state:

## I.  INTRODUCTION

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the Washington Field Office.   I have been employed by the FBI as a Special Agent since January 1991.   Throughout my FBI employment, I have investigated a number of federal violations, including violent crimes, gang activity, narcotics investigations, bank fraud, domestic and international terrorism, counterintelligence, and money laundering investigations. I have also served in an overseas capacity working with foreign intelligence services.   I have been the affiant for numerous search and arrest warrants and several Title III investigations.

2.      As a Federal agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.   As a law enforcement officer tasked with working forfeiture and money laundering cases, I have participated in the seizure of proceeds, safe deposit boxes, bank accounts, and other property traceable to fraud.   I have extensive experience conducting financial investigations, and have been the lead investigator for other types of investigations, including, but not limited to, undercover operations, physical surveillance, consensual monitoring, interviewing informants and cooperating

witnesses, analyzing all types of communications, telephones and otherwise, and the analytical review of law enforcement and public record information. I have extensive arrest and trial experience, which has led to successful criminal convictions.

3.      I base the facts set forth in this affidavit upon my personal observations, my training and experience, information obtained during my participation in this investigation, review of documents to include business and bank records, knowledge obtained from other individuals including law enforcement personnel, and communications with others who have personal knowledge of the events and circumstances described herein. Because this affidavit is being submitted for the limited purpose of enabling this Court to make a judicial determination of probable cause to issue a seizure warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish the legal basis for the issuance of a seizure warrant.

4.      As further described below, this affidavit is made in support of an application for a seizure warrant for funds, which constitute proceeds traceable to a scheme intended to obtain funds in the custody and control of Capital One by means of false or fraudulent pretenses, in violation of 18 U.S.C. § 1344.

## II.  APPLICABLE LAW

A.      <u>Bank Fraud</u>

5.      Title 18 U.S.C. § 1344 provides that "[w]hoever knowingly executes, or attempts to execute, a scheme or artifice… to obtain any of the moneys, funds, credits, assets, securities, or other property… under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises" shall be guilty of a federal offense. Pursuant

to this statute, the government must show that the defendant knowingly defrauded, or attempted to defraud, a federally insured financial institution.

B.   Asset Forfeiture Statutes

6.      The proceeds of bank fraud are subject to forfeiture under both civil and criminal forfeiture authorities.  Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to bank fraud is subject to civil forfeiture.  In addition, 28 U.S.C. § 2461(c) provides that, "[i]f a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized," then the government can obtain forfeiture of property "as part of the sentence in the criminal case."  Thus, pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to bank fraud is subject to criminal forfeiture.

7.      Further, 18 U.S.C. § 984 allows the United States to seize for civil forfeiture identical substitute property found in the same place where the "guilty" property had been kept.  For purposes of Section 984, this affidavit need not demonstrate that the funds now in DAVID LARKERS's accounts are the particular funds involved in the bank fraud violation, so long as the forfeiture is sought for other funds on deposit in that same account.  Section 984 applies to civil forfeiture actions commenced within one year from the date of the offense, and essentially relaxes the tracing requirements in civil forfeiture actions.

8.      This application seeks a seizure warrant under both civil and criminal authority because the property to be seized could be placed beyond process if not seized by warrant.

9.      Pursuant to 18 U.S.C. § 981(b), property subject to civil forfeiture may be seized

via a civil seizure warrant issued by a judicial officer "in any district in which a forfeiture action against the property may be filed," and may be executed "in any district in which the property is found," if there is probable cause to believe the property is subject to forfeiture. The criminal forfeiture statute, 18 U.S.C. § 982(b)(1), incorporates the procedures in 21 U.S.C. § 853 (other than subsection (d)) for a criminal forfeiture action. Title 21 U.S.C. § 853(f) permits the government to request the issuance of a seizure warrant for property subject to criminal forfeiture.

### III.  PROBABLE CAUSE

A.    <u>Fraudulent Check Scheme</u>

10.    On June 9, 2016, WITNESS 1 entered the Third District Station in Washington, D.C. and informed law enforcement that WITNESS 1 was the victim of a fraud. Thereafter, law enforcement interviewed WITNESS 1 and discovered the following:

11.    WITNESS 1 owns a residence in Northwest, D.C. In June 2016, WITNESS 1 hired a company, Dog Walking DC, to provide dog-walking services. Dog Walking D.C. assigned a dog-walker to WITNESS 1's residence. Thereafter, the assigned dog-walker was given access to WITNESS 1's residence. The dog walker was the only person with access to WITNESS 1's residence.

12.    On June 6, 2016, the dog walker went into WITNESS 1's file cabinet, and removed Capital One Starter Checks without WITNESS 1's permission. That same day, at approximately 2:24 p.m., the dog-walker made a check out to "David Larker" in the amount of $5,250. The dog walker deposited the check into account number XX3802 at the Congressional Federal Credit Union ("CFCU") located at 441 2nd Street, Southwest, Washington, D.C.

13.    WITNESS 1 was not aware of this offense when it occurred. WITNESS 1 was

made aware of this offense when WITNESS 1 received an alert from Capital One, a federally insured financial institution, advising WITNESS 1 that WITNESS 1's account had been overdrawn.  Upon receiving the alert, WITNESS 1 spoke with a Capital One representative, who showed WITNESS 1 an image of the fraudulent check.  It was at this point that WITNESS 1 realized four Capital One Starter Checks had been stolen from WITNESS 1's checkbook. WITNESS 1 continued to receive notifications from Capital One regarding the stolen checks.

14.     Law enforcement contacted WITNESS 2, the owner of Dog Walking D.C. WITNESS 2 confirmed that DAVID LARKER is a dog walker, who was only recently hired at Dog Walking D.C.  WITNESS 2 provided law enforcement with a picture of DAVID LARKER, as well as paperwork used in the hiring process, which illustrates DAVID LARKER's signature. Law enforcement examined the signatures on the hiring paperwork and on the fraudulent checks, and found that they were remarkably similar.  Additionally, law enforcement reviewed video footage from CFCU on June 6, 2016.  In the footage, an individual enters the Ford House Office building on 441 2nd Street Southwest and walks towards the credit union.  A few moments later, the individual exits the building.  The individual in this footage closely resembles the photograph of DAVID LARKER provided to Dog Walking D.C. through the hiring process.  Based on all of this information, your affiant believes that the dog walker who stole WITNESS 1's checks is, in fact, DAVID LARKER.

B.     <u>Bank Records</u>

15.     Your affiant has reviewed bank records from account number XX3802 at CFCU. According to these records, DAVID LARKER is the signatory on the account.  The records confirm that, on June 6, 2016, the account received a deposit in the amount of $5,250.  Prior to

this deposit, the account balance was $20.02.   Between June 6, 2016 to June 9, 2016, Larker

withdrew varying smaller amounts from the account.   Specifically, on June 6, Larker withdrew

$210; on June 7, 2016, Larker withdrew $600; and finally, on June 9, 2016, Larker withdrew

$888.76.   On June 10, 2016, CFCU put a hold on the account.   After discounting bank fees, the

current account balance is $3,541.52.

## IV.   CONCLUSION

16.     Based on the foregoing, I submit that there is probable cause to seize funds up to

$5,250 held in account number XX3802 at CFCU on the ground that these funds constitute the

proceeds of bank fraud in violation of 18 U.S.C. § 1344 and are subject to forfeiture pursuant to

18 U.S.C. §§ 981(a)(1)(C), 984, and 28 U.S.C. § 2461(c).

17.     I declare under penalty of perjury that the foregoing is true and correct to the best

of my knowledge and belief.


_____
Bridget Cox
Special Agent
Federal Bureau of Investigations


Subscribed and sworn to before me
this 5th day of January, 2017


_____
The Honorable Deborah A. Robinson
Magistrate Judge for the District of Columbia